## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## PENNSYLVANIA

**JUSTIN SHARRATT**
1348 Lucia Drive
Canonsburg, Pennsylvania 15317

      Plaintiff,

                                    **Civil Action No**.

      vs.

**JOHN MURTHA**,
in his individual capacity,
2238 Woodcrest Drive                       **JURY TRIAL DEMANDED.**
Johnstown, Pennsylvania 15905

      Defendant.

## COMPLAINT.

1.   Plaintiff Justin Sharratt, age 24, is an adult U.S. citizen who resides at 1348 Lucia Drive,

Canonsburg, Washington County, Western District of Pennsylvania.

2.   Defendant John Murtha is an adult U.S. citizen who resides at 2238 Woodcrest Drive,

Johnstown, Cambria County, Western District of Pennsylvania.

## JURISDICTION AND VENUE.

3.   This Court has jurisdiction over the Federal claims contained in this lawsuit pursuant

to Title 28 U.S.C. § 1331; the Court has jurisdiction over the State law claims contained herein

pursuant to pendant jurisdiction set forth in Title 28 U.S.C. Section 1367.

4.   Venue is proper in this District pursuant to Title 28 U.S.C. § 1391 because the Defendant

is a resident of Cambria County which is located in this District, Defendant is domiciled in this

District, and because a substantial portion of the Defendant's unlawful acts giving rise to

Sharratt's claims occurred in this District.

1

# FACTUAL BACKGROUND.

5.      In November, 2005 Plaintiff Justin Sharratt, then age 21, was honorably serving our Country in Iraq as a Lance Corporal in the United States Marine Corps.

6.      On November 19, 2005 Sharratt, a member of 1st Squad, 3rd Platoon, Kilo Company, 3rd Battalion, 1st Marine Regiment, was engaged in a skirmish with Iraqi insurgents in the city of Haditha, Iraq.  A number of insurgents were killed pursuant to the Rules of Engagement.

7.      Starting in approximately May of 2006, as detailed below, John Murtha repeatedly appeared on national television, gave press conferences, issued press releases, and made defamatory statements about the Marines involved in the Haditha incident, which included Sharratt. Murtha also made similar defamatory statements at other times and places to other individuals.

8.      The statements were made outside of Murtha's scope of employment as a United States Congressman.

9.      Sharratt was publicly identified as one of eight Marines involved in the Haditha incident.

10.      The statements made by Murtha, taken from official transcripts, included but were not limited to the following:

> **(a)      CNN, The Situation Room, May 19, 2006:**
>
> BLITZER: There's an investigation of what happened at Haditha. As you well know, U.S. marines were involved in an incident, civilians were killed. The chairman of the house armed services committee Duncan Hunter says, there's been no resolution, this investigation continues. I want to play for you what he said today. Duncan Hunter.
>
> (BEGIN VIDEO CLIP)
>
> REP. DUNCAN HUNTER, (R) ARMED SERVICES CHAIRMAN: If there were problems in the chain of command, if there was a cover-up, if anything wasn't reported, let the chips fall where they may. But don't presume anything. Those reports aren't finished yet. But the reports and the investigations are being pursued with great integrity.

BLITZER: He was responding in part to you, because you've suggested this week that there in effect was a massacre.

MURTHA: Well there was. There's no question about it. I know, in talking to a number of people, and the information, I've never given you bad information yet… When this thing's all over, you're going to see exactly what I've said to be true. That, there was an IED attack, it killed one marine, and then they overreacted and killed a number of civilians without anybody firing at them. That's what you're going to find out.

BLITZER: The marines say they're still investigating. They don't know what happened yet. The pentagon says the same thing. How do you know what happened?

MURTHA: Wolf, you read the "Time" magazine articles. There are pictures, there are photos. You don't have to talk to the military about the proof.

## (b)  CNN, Anderson Cooper, May 30, 2006:

COOPER: Congressman Murtha, you believe the military investigation will ultimately show  that the troops in Haditha -- quote -- "overreacted because of the pressure on them and killed innocent civilians in cold blood." That's a quote from you.

How are you so sure at this point? The investigation isn't even complete.

MURTHA: Well, the Marine Corps at the highest level came over and briefed me a couple months ago.

I read the article in "TIME" magazine. I wasn't satisfied that anything was being done, that they were not really following up on this thing.

COOPER: Two investigations going on, one about the incident, the other about any possible cover-up. You say there is a cover-up. How high do you think it goes?

MURTHA: Well, I don't know.

COOPER: Again, the investigation is still going on, Couldn't it have been the fog of war? There was a military lawyer quoted in "The Washington Post" on November 19, quoted, who said that, look, that day, November 19, was an unusually -- it was an unusually violent day.

MURTHA: Anderson, let me tell you something.

Two months ago, the day afterwards, they knew that the IED attack, they only killed one Marine. There was no hostile fire. There was nobody firing at our Marines. A taxi pulled up. They killed the people in the taxi. Then they went into the rooms and killed women and children.

COOPER: There have been those who said you are politicizing this. You're jumping to judgment. The investigation's still going on.

A man by the name of Ilario Pantano, a Marine who was accused with two counts of premeditated murder, charges which were later dropped, he wrote a letter to "The Washington Post." And he said this -- quote -- "Not only is he" -- meaning you, Mr. Murtha -- "certain of the Marines' guilt, but he claims to know the cause, which he conveniently attributes to a policy he opposes. Let the courts decide if these Marines are guilty. They haven't even been charged with a crime yet, so it is premature to presume their guilt, unless that presumption is tied to a political motive."

MURTHA: Well, let me tell you something… There's no question in my mind. The highest level of the Marine Corps has come to me and told me what happened. And there is no question in my mind exactly what happened.

COOPER: There was also an unnamed lawyer quoted in "The Washington Post" who said that there was a report that some of the radio traffic indicates there was some small-arms fire in the wake of this IED, and perhaps that played some role in it, meaning the Marines thought they were under fire. Have you heard that from the people you were briefed by?

MURTHA: Anderson, I can only tell you that's not the information I have.

## (c)     CNN, The Situation Room, May 30, 2006:

BLITZER: There are some who are already making comparisons between Haditha and My Lai in Vietnam, the massacre in which hundreds of Vietnamese civilians were killed, an incident that you well remember.

Is that a fair comparison, a fair analogy?

MURTHA: Well, I think it's a fair analogy, except for the numbers. There was about 124, I think, in the My Lai incident. And then there was 24 here.

### (d)  NBC, Nightly News, May 17, 2006:

BRIAN WILLIAMS, anchor:

There are disturbing new allegations tonight from the congressman and decorated Marine veteran who stunned the Bush administration about six months ago with his call for US withdrawal from Iraq. Tonight Congressman Jack Murtha, a Democrat from the state of Pennsylvania, is in the news again and in a big way, accusing US Marines of killing innocent civilians in cold blood. We're joined for more on this story tonight by our NBC News Pentagon correspondent Jim Miklaszewski.

Jim, good evening.

JIM MIKLASZEWSKI reporting:

Brian, this all stems from an incident that occurred last November and today the military's investigation is still dragging on.

From the very beginning, Iraqis in the town of Haditha claimed US Marines deliberately killed at least 15 unarmed Iraqi civilians, including seven women and three children. This young Iraqi girl claims the Marines killed six members of her family, including her parents. `The Americans came into the room where my father was praying,' she says, 'and shot him.' Today, in a remarkable statement in Washington, Democratic Congressman John Murtha claims it's true. Representative JOHN MURTHA (Democrat, Pennsylvania): There was no firefight. There was no IED that killed these innocent people. Our troops overreacted because of the pressure on them, and they killed innocent civilians in cold blood.

## (e)  UPI, May 17, 2006:

A Pentagon investigation will show that U.S. Marines killed 15 civilians in Iraq "in cold blood" a U.S. congressman said in Washington…Murtha said military sources have told him the Pentagon investigation will show the troops "overreacted because of the pressure on them, and they killed innocent civilians in cold blood."

## (f) Pittsburgh Post-Gazette, July 2, 2006:

On the Web and on conservative talk shows, criticism of Mr. Murtha reached a new high last month with his predictions that Marines would be found guilty of having killed Iraqi civilians "in cold blood" in the town of Haditha.

11.     Murtha's statements that Sharratt and his Haditha comrades were "cold-blooded murderers"  and "massacred" innocent civilians have been republished, re-broadcast and reproduced by countless third parties throughout the world, including throughout the Western

District of Pennsylvania, where Sharratt resides.

12. Murtha's defamatory statements were false.

13. Furthermore, at the time Murtha made these statements, no one from the Pentagon had told Murtha – as Murtha claimed – that Sharratt and his Haditha comrades murdered or massacred innocent civilians in "cold-blood"; this was yet another false statement by Murtha.

14. Sharratt was charged with three counts of unpremeditated murder under the Uniform Code of Military Justice.

15. After an Article 32 Hearing, Sharratt was exonerated; all charges were dropped because no evidence existed to support the charges.

16. As set forth below, Murtha's statements were false, defamatory in nature, and violated Sharratt's rights guaranteed him by the United States Constitution. The statements also constituted slander per se, and the tort of invasion of privacy.

## COUNT I. VIOLATION OF SHARRATT'S FIFTH AMENDMENT RIGHT UNDER THE UNITED STATES CONSTITUTION TO DUE PROCESS OF LAW BEFORE BEING DEPRIVED OF HIS LIFE, LIBERTY AND PROPERTY.

17. Plaintiff Sharratt hereby incorporates by reference the foregoing paragraphs as though set forth fully.

18. The Fifth Amendment of the United States Constitution guarantees Sharratt the protection of being afforded due process of law before being deprived of his life, his liberty, or his property.

19.    It is long-established United States Supreme Court law regarding the Fifth Amendment of the United States Constitution that "where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential". Board of Regents of State Colleges vs. Roth, 408 U.S. 564, 572 (1972).

20.    Plaintiff herein seeks money damages against Murtha, a federal official who acted under color of federal authority when making the defamatory statements. This cause of action, as well as Counts II and III of this lawsuit, is brought pursuant to the authority of Bivens vs. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 28 L.Ed. 2d 619 (1971).

21.    Murtha, when making the defamatory statements, was acting under color of federal authority; at all times material, Murtha was cloaked with the official authority of being a United States Congressman, and Murtha claims to have acted under color of official right.

22.    Murtha's defamatory statements were made intentionally.

23.    Murtha's statements were also made with malice; they were false, or were certainly made with reckless disregard of their truth or falsity.

24.    In relation to Murtha's statements, Sharratt was deprived notice and an opportunity to respond, which violated his Fifth Amendment right to due process of law.

25.    Sharratt, as a direct result of Murtha's false, defamatory statements, has lost significant employment opportunities; this constitutes a loss of Sharratt's liberty under the Fifth Amendment of the United States Constitution.

26.    Sharratt, also as a direct result of Murtha's false, defamatory statements, has lost and will continue to lose significant associational opportunities; this also constitutes a loss of Sharratt's

liberty under the Fifth Amendment.

27.     Sharratt, in being labeled repeatedly by Murtha as a "cold-blooded murderer", and by Murtha outrageously claiming that the Haditha incident was comparable to the infamous My Lei massacre of Vietnam, has suffered permanent, irreversible damage to his reputation.

28.     He is only 24 years old.

WHEREFORE, Sharratt demands judgment in his favor and against Murtha, unspecified compensatory and punitive damages, and any/all other relief to which he is entitled, including but not limited to costs and attorney's fees, and whatever other relief this Court deems appropriate, whether legal or equitable.


## COUNT II.
### VIOLATION OF SHARRATT'S SIXTH AMENDMENT RIGHT UNDER THE UNITED STATES CONSTITUTION TO THE PRESUMPTION OF INNOCENCE AND A FAIR TRIAL.

29.     Sharratt incorporates the foregoing paragraphs as though set forth fully.

30.     The Sixth Amendment to the United States Constitution guarantees Sharratt the right to a fair trial, which includes the presumption of innocence.

31.     Murtha's repeated outrageous, false and defamatory statements, made under color of Federal Authority, stripped Sharratt of the presumption of innocence, poisoned the entire prospective jury pool, and created a presumption of guilt.

32.     Murtha therefore denied the young Marine his constitutional right to the presumption of innocence; as a direct result, Sharratt suffered severe emotional distress and permanent damage to his reputation.

WHEREFORE, Sharratt demands judgment in his favor and against Murtha, unspecified

compensatory and punitive damages, and any other relief to which he is entitled, including but not limited to costs and attorney's fees.


## COUNT III.  VIOLATION OF SHARRATT'S CONSTITIONAL RIGHT TO EQUAL PROTECTION OF THE LAW.

33.     Plaintiff hereby incorporates by reference the facts and allegations set forth in the foregoing paragraphs.

34.     Sharratt is guaranteed under the Fifth Amendment of the Constitution the right to the Equal Protection of the law, specifically, his due process rights under the Fifth Amendment and his right under the Sixth Amendment to the presumption of innocence and a fair trial.

35.     Murtha's repeated outrageous, false and defamatory statements stripped Sharratt of the presumption of innocence, poisoned the entire prospective jury pool, and created a presumption of guilt.  The statements also denied Sharratt his fundamental constitutional right to due process.

36.     Murtha, who was at all times material acting under color of federal authority as a federal official, therefore denied the young Marine  - one of Murtha's own constituents - his right under the United States Constitution to the Equal Protection of the laws.

37.      As a direct result, Sharratt has suffered severe emotional distress, permanent damage to his reputation, and other unspecified damages.


     **WHEREFORE**, Plaintiff Justin Sharratt demands judgment against Murtha and unspecified compensatory and punitive damages, costs and attorney's fees, and any other relief, legal or equitable, which this Honorable Court deems appropriate.

# COUNT IV.

## SLANDER PER SE.

38.     Plaintiff Sharratt hereby incorporates by reference the foregoing paragraphs as though set forth fully.

39.     The statements made by Murtha were statements of fact, not mere opinion.

40.     The statements were made with malice by Murtha because they were false; alternatively, Murtha made the statements with reckless disregard of their truth or falsity.

41.     Murtha intentionally made the statements.

42.     The statements applied to and were imputed to Sharratt because Sharratt was one of only eight Marines involved in the incident to which Murtha was referring; Sharratt's name was also published repeatedly by media outlets throughout the world as one of the Haditha Marines who Murtha claimed participated in the alleged "massacre" of women and children.

43.     Murtha's statements that Sharratt was a "cold-blooded murderer" and that he deliberately massacred innocent Iraqi civilians obviously imputes criminal offenses to Sharratt. Therefore, Murtha's statements constituted not mere slander, but slander per se.

44.     Murtha's statements have permanently lowered Sharratt and Sharratt's reputation in the eyes and estimation of Sharratt's community and the world community and have and will permanently into the future deter people from associating and/or dealing with Sharratt.

45.     Murtha's statements have caused permanent damage and harm to Sharratt's reputation.

46.     Murtha was acting outside the scope of his employment when he made the statements at

issue.

**WHEREFORE**, Plaintiff Justin Sharratt demands judgment against Murtha and unspecified compensatory and punitive damages, as well as costs and attorney's fees.

## COUNT V.
## TORT OF INVASION OF PRIVACY: PLACING SHARRATT IN A FALSE LIGHT.

47.     Plaintiff Sharratt hereby incorporates by reference the facts and allegations set forth in Paragraphs 1-46.

48.     Murtha's defamatory statements were statements of fact.

49.     The statements placed Sharratt in a false light, specifically, that Sharratt was a murderer of innocent women and children.

50.     The statements were false.

51.     The statements were made with actual malice in that they were false or were made with reckless disregard of their truth or falsity.

52.     Murtha's statements have permanently lowered Sharratt and Sharratt's reputation in the eyes and estimation of Sharratt's community and the world community and have and will permanently into the future deter people from associating and/or dealing with Sharratt.

53.     Any privilege that Murtha was afforded to make such statements was abused because the statements were known to be false when made or were made in reckless disregard of whether they were true or false.

54.     Murtha made the statements outside the scope of his employment.

55.     Since Mr. Murtha first went public with his statements accusing the involved Marines, to include Sharratt, of being cold-blooded killers who perpetrated a massacre and participated in a cover-up, various third parties have and are still continuing to repeat, either in writing or verbally, the false, misleading and defamatory statements. The republications have taken the form of news articles, editorials, letters to editors, television broadcasts and Internet discussions. Each of these republications, which were and are being published or available throughout the United States, including, but not limited to, the Western District of Pennsylvania, and throughout the world, create a new and distinct cause of action against Murtha.

56.     Mr. Murtha is liable for any republications by third parties which were reasonably foreseeable and/or the natural and probable consequence of the original publications; in fact, Murtha intended, knew or should have known that third parties would repeat and publish his false, misleading and defamatory accusations.

57.     All of the re-publications were also republished, and continue to be available, via the Internet, Lexis/Nexis and other media sources. Other unknown publications have published or will publish in the future the false, defamatory, and reckless statements originally uttered by Murtha.

58.     As a direct and proximate cause of the publication of Murtha's statements and the foreseeable republications, Justin Sharratt has suffered embarrassment, humiliation, mental anguish, stress and emotional distress, and permanent damage to his reputation.

**WHEREFORE**, Plaintiff Justin Sharratt demands judgment against Murtha and unspecified compensatory and punitive damages, as well as costs and attorney's fees.

## COUNT VI.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

59.     Plaintiff Sharratt hereby incorporates by reference the facts and allegations set forth in

Paragraphs 1-14.

60.     The intentional making of these false, malicious, unnecessary defamatory statements by

Murtha was truly outrageous.

61.     Murtha's intention was to cause Sharratt severe emotional distress; alternatively, the

statements certainly were made with recklessness as to their effect.

62.     The statements did in fact cause severe emotional distress to Sharratt.

   **WHEREFORE**, Plaintiff Justin Sharratt demands judgment against Murtha and

unspecified compensatory and punitive damages, costs and attorney's fees, and any other relief

this Honorable Court deems appropriate.


**JURY TRIAL DEMANDED.**

**DATE**: September 25, 2008

                                                    Respectfully submitted,

                                                     /s/ Noah Geary
                                                    Noah Geary, Esquire
                                                    Attorney for Plaintiff,
                                                    Justin Sharratt
                                                    Suite 225
                                                    Washington Trust Building
                                                    Washington, Pennsylvania 15301
                                                    (724) 222-3788
                                                    PA I.D. # 78382

**VERIFICATION:**

I, Justin Sharratt, hereby verify that the averments herein made in the foregoing

**COMPLAINT** are true and correct to the best of my knowledge, information, and belief. I make this

verification subject to the penalties of 18 C.S.A. 4914, relating to unsworn falsification to authorities.


/s/ Justin Sharratt                            September 25, 2008
Justin Sharratt