## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## PENNSYLVANIA

| | |
|---|---|
| **JUSTIN SHARRATT** ) <br> 1348 Lucia Drive ) <br> Canonsburg, Pennsylvania 15317 ) <br> ) <br> Plaintiff, ) <br> ) **Civil Action No**. 3:08 – cv – 229 <br> vs. ) <br> ) **BRIEF IN OPPOSITION TO** <br> **JOHN MURTHA**, ) **GOVERNMENT'S REQUEST TO** <br> in his individual capacity, ) **SUBSTITUTE THE UNITED STATES** <br> 2238 Woodcrest Drive ) **AS A DEFENDANT FOR JOHN** <br> Johnstown, Pennsylvania 15905 ) **MURTHA.** <br> ) <br> Defendant. ) | |

### BRIEF IN OPPOSITION.

**AND NOW COMES** Justin Sharratt, by and through his attorney Noah Geary, Esquire, and respectfully responds as follows:

### BACKGROUND.

Marine Lance Corporal Justin Sharratt filed a Complaint against John Murtha in the Western District of Pennsylvania on September 25, 2008. The Complaint contains three <u>Bivens</u> causes of action at Counts I-III. These Counts are not the subject of the Government's instant Motion. The Complaint also contained at Counts IV-VI causes of action for Slander Per Se, the Tort of Invasion of Privacy - specifically for portraying Sharratt in a False Light - and for Intentional Infliction of Emotional Distress. It is the latter three counts which are the subject of the Government's instant Motion.

1

Prior to the filing of Sharratt's lawsuit, Sharratt's superior, Staff Sergeant Frank Wuterich, filed a lawsuit against John Murtha in the D.C. Circuit. Wuterich's Complaint contained no <u>Bivens</u> causes of action. Wuterich's Complaint alleged Slander and Libel.

In response to Wuterich's Complaint, the Government filed a Motion to Substitute the United States as a Defendant for John Murtha. In support, the Government filed a Westfall Certification. The District Court denied the Government's Motion, and ruled that Wuterich could proceed and conduct discovery. The Government appealed the District Court's ruling, and on April 15, 2009, the D.C. Circuit Court of Appeals reversed the District Court. The sole and narrow basis for the reversal was the conclusion that Wuterich's Complaint failed to allege sufficient facts, that, taken as true, would establish that Murtha was acting outside the scope of his employment when he repeatedly slandered the Haditha Marines.[1]

On April 15, 2009, Sharratt filed an Amended Complaint. Therein, Sharratt, at paragraph 46. and fourteen subparts thereto, did allege facts that, if true, would establish under Pennsylvania law that Murtha acted outside the scope of employment as a U.S. Congressman when Murtha engaged in the conduct in question. Specifically, Murtha repeatedly appeared on National television and radio and stated that he had inside information from members of the Pentagon participating in the criminal investigation of Sharratt and Sharratt's involvement in the November, 2005 incident in Haditha, Iraq. Pursuant to his sources, members of the Executive Branch, Murtha stated that it was fact that Sharratt "murdered" innocent Haditha civilians "in cold blood" and "massacred" innocent Iraqi women and children. Murtha also outrageously

---

[1] Disturbingly, the D.C. Circuit Court of Appeals referred to Wuterich's lawsuit as a "witch hunt" against Murtha. Although Wuterich's Complaint happened to be deficient in allegations of fact, which proved dispositive, it is without question that Murtha committed slander per se. Wuterich's lawsuit therefore certainly had merit. For a Circuit Court of Appeals to refer to a meritorious lawsuit against Murtha as a "witch hunt" is a curious statement indeed.

2

compared the Haditha incident to the infamous My Lei massacre of Vietnam. Again, Murtha premised his statements of fact by stating that his source of information were members of the Pentagon – members of the Executive Branch - who were engaged in a criminal investigation of Sharratt's involvement in the Haditha incident.

## LAW.

When a federal employee is named in a tort lawsuit, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") permits the Attorney General of the United States or his designee to submit a Certification that the employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose.

A Plaintiff may contest the Attorney General's scope of employment Certification. The Certification is subject to judicial review. If the Certification is found to be sufficient and valid, it constitutes prima facie evidence that the employee was acting within the scope of his employment. The Certification, however, is rebuttable.

A Plaintiff can successfully rebut the Certification by alleging sufficient facts that, taken as true, would establish that the Defendant's actions in question exceeded the scope of his/her employment. A successful rebuttal to the Certification requires the DENIAL of the Government's Motion to Substitute the United States for the Defendant.

It is only when a Plaintiff pleads no facts in his Complaint or in any subsequent filing that, if true, would demonstrate that the Defendant had been acting outside the scope of his employment that a Motion for Substitution should be granted. If the United States is substituted as the Defendant in place of the employee, the suit is governed by the Federal Tort Claims Act and is subject to all of the FTCA's exceptions for actions in which the Government has not waived sovereign immunity. If one of these exceptions applies, the Federal Court lacks subject

matter jurisdiction, which has the effect of altogether barring Plaintiff's case. *See* Title 28 U.S.C. §2679(b)(1), Gutierrez De Martinez vs. Lamagno, 515 U.S. 417 (1995), Council on American Islamic Relations vs. Ballenger, 444 F. 3d 659 (D.C. Cir. 2006), Rasul vs. Myers, 512 F. 3d 644 (D.C. Cir. 2008).

## ANALYSIS.

The D.C. Circuit Court of Appeals decision in the Wuterich matter cited by the Government throughout its brief is of no import to the instant case. The sole and narrow basis for its ruling to grant the Government's Motion to Substitute the United States for John Murtha was that Wuterich's Complaint was woefully deficient in pleading facts that if true, would establish that John Murtha acted outside of the scope of his employment:

> "Because Wuterich has failed to meet even this minimal pleading burden, we vacate the District Court's Order denying Certification pending discovery and remand the case with instructions to the District Court to substitute the United States as the defendant in place of Congressman Murtha."
>
> (*Opinion, at page 3*).

> "His Complaint lacking,..."
>
> (*Opinion, at page 17*).

> "In sum, because Wuterich has failed to 'allege sufficient facts that taken as true, would establish that [Murtha's] actions exceeded the scope of his employment.' We vacate the District Court's Order."
>
> (*Opinion, at page 19*).

The Government argues that Sharratt's Complaint is "nearly identical" to Wuterich's Complaint. This is obviously and patently false. One reading of the pertinent paragraphs in each Complaint shows that Wuterich's Complaint **was** woefully deficient. In clear contrast, Sharratt's

4

Amended Complaint pleads sufficient facts, which if taken as true, successfully rebut the Government's Certification. Compare Wuterich's allegations of fact to Sharratt's. Wuterich's Complaint contained one conclusory sentence within one paragraph of his Complaint:

> 19. Upon information and belief, since at least May 2006, Mr. Mutha has spread false and malicious lies about SSgt Wuterich and his squad of marines. **These comments were made outside of the scope of his employment as a U.S. Congressmen and intended to serve his own private purpose and interest.** Furthermore, these comments, both verbally and in writing, have been reproduced by countless third parties throughout the world. (**Emphasis added**).

In stark contrast, Sharratt plead as follows:

> 46. The following facts evidence that Murtha was acting outside the scope of his employment when he made the statements at issue concerning the on-going criminal investigation concerning the Haditha Incident:
>
> a. Murtha's statements were statements of purported fact that only a Military investigator or Advocate for the Government in a Court Martial, members of the Executive Branch, had authority to make. Such statements are reserved to the exclusive province of members of the Executive Branch. Murtha obviously is a member of the Legislative Branch - not the Executive Branch. Thus, his statements were clearly beyond the scope of his employment as a member of the Legislative Branch.
>
> b. Not one of the other 434 Members of the United States House of Representatives commented on the Haditha criminal investigation. If such was within the scope of a Congressman's duties, that is, to comment on an on-going criminal/military/Executive Branch investigation, other Members of the House of Representatives would have similarly commented. Notably, even the 8 Congressman representing the Districts wherein each of the 8 Haditha Marines resided made no statements.
>
> c. Not one of 100 United States Senators commented on the on-going criminal investigation. This is further evidence that it is not within the duties of a Member of the Legislative Branch to comment on an on-going criminal investigation performed by the Executive Branch.
>
> d. Murtha's conclusory statements were also quasi-judicial in nature, in that he was finding the Plaintiff guilty/convicting him of murder. In so doing, Murtha left the purview of the Legislative Branch and improperly trespassed into the Judicial Branch as well.

5

e. Murtha's repeatedly making false statements that the Plaintiff was a "cold-blooded murderer" and comparing the alleged Haditha Incident to the infamous My Lei massacre of Vietnam was utterly outrageous.

f. If Murtha had legitimate intentions/objectives, the fashion in which he attempted to achieve these objectives was completely outrageous.

g. Murtha's employer was the constituents of the 12th Legislative District of Pennsylvania. Murtha's constituents at no time granted him authority to comment on an on-going criminal investigation performed by the Executive Branch, particularly in such an outrageous, inappropriate fashion.

h. Murtha's conduct constituted willful misconduct, which is defined as exhibiting a disregard for the standards of behavior that his employer – the constituents of his Legislative District - can rightfully expect of an employee. Murtha disregarded the standard of behavior expected of a sitting United States Congressman by repeatedly and unnecessarily making false, reckless statements which imputed criminal liability to a U.S. Marine - who had yet to even be charged with a crime.

i. Murtha's repeated making of false, reckless, defamatory statements constituted an unlawful act(s), violating Sharratt's rights guaranteed him in the United States Constitution to the presumption of innocence embodied in the Sixth Amendment's Right to a Fair Trial.

j. Murtha's repeated making of false, reckless, defamatory statements constituted an unlawful act(s), violating Sharratt's rights guaranteed him in the United States Constitution to due process of law contained in the Fifth and Fourteenth Amendments.

k. Murtha's behavior was completely irresponsible and unreasonable.

l. It is wholly foreign to employment as a member of the Legislative Branch to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch.

m. Murtha's behavior was motivated by solely, wholly and purely personal reasons, specifically, in an attempt to obtain the House Majority Leader Position which he lost to Representative Steny Hoyer. House Speaker Nancy Pelosi backed Murtha over Hoyer, and Murtha's conduct was done in an effort to curry favor with Pelosi, win this seat and further his political career. In conjunction, Murtha's defamatory statements were not within the scope of his employment as a member of the Legislative Branch as explained in subparagraph a., above.

It is without question that Sharratt's Amended Complaint sufficiently alleges facts that satisfy the liberal Notice requirements of **Federal Rule of Civil Procedure 8(a)**. The sole and extremely narrow issue that this Court must resolve is whether Sharratt's Amended Complaint pleads sufficient facts. It does. Therefore, the Government's Motion must be denied.

The ultimate question of whether Murtha acted outside or within the scope of his employment is not for this Court to decide at either this 12(b) Motion stage - or at Summary Judgment. It is a question for a jury. Pennsylvania law has long held that it is for a **jury** to decide whether one acted within or outside the scope of his employment. *See* Chuy vs. Philadelphia Eagles Football Club, 595 F. 2d 1265 (3rd Cir. Pa. 1979) (Pennsylvania law holds that the existence of a master-servant relationship and conduct outside the scope of employment are factual issues for a jury). Mauk vs. Wright, 367 F. Supp. 961 (M.D. Pa. 1973) (Under Pennsylvania law, jury is fact finder as to whether there is a master-servant relationship, and also as to scope of employment). Exher vs. Gangewere, 152 A. 2d 458 (Pa. 1959) (When the existence or scope of employment or agency depends upon oral testimony, all of the circumstances must be considered, and where the evidence is in conflict the question is peculiarly one for the jury). Frankel vs. Moody, 393 F. 2d 279 (3rd Cir. Pa. 1968) (Unless it can be found that employee was acting outside the scope of his employment as a matter of law, the issue of scope of employment is one to be determined by the finder of fact).

Under Pennsylvania law, the only time that a scope of employment issue is to be resolved by a judge rather than a jury is when no disputes exist as to material issues of fact <u>and</u> the inferences to be drawn therefrom. Costa vs. Roxborough Memorial Hospital, 708 A. 2d 490 (Pa. Super. 1998) (Whether employee is acting within scope of his employment, for purposes of vicarious liability, is typically a question for a jury). Shuman Estate vs. Weber, 419 A. 2d 169

7

(Pa. Super. 1980) (Determination of precise nature of employer-employee relationship and scope of any particular employment is generally within exclusive province of a jury). Such will not be the case here. Disputes of material fact will exist. Disputes as to what inference should be drawn from various facts will also exist. Thus, this case will be going to a jury.

**ISSUE:** Does Sharratt's Amended Complaint allege sufficient facts that taken as true would establish that Murtha's actions exceeded the scope of his employment?

**ANSWER: YES**.

As detailed below, Pennsylvania law deems John Murtha to have acted outside the scope of his employment if any of the following allegations are true, which is required under the standard of review.

    a.     Murtha's statements were statements of purported fact that only a Military investigator or Advocate for the Government in a Court Martial, members of the Executive Branch, had authority to make. Such statements are reserved to the exclusive province of members of the Executive Branch. Murtha obviously is a member of the Legislative Branch - not the Executive Branch. Thus, his statements were clearly beyond the scope of his employment as a member of the Legislative Branch.

Although there is no Pennsylvania case law precedent on point as to this allegation, it is without question that it is beyond the scope of a U.S. Congressman's employment to make conclusory statements of fact about a pending criminal investigation, particularly when the Congressman claims, as Murtha did, that his source of information was inside information from Members of the Executive Branch. Although it would be inappropriate for a prosecutor or prosecution investigator to so comment, it at least would be in the latter's scope of employment being a member of the Executive Branch. Murtha is not a Member of the Executive Branch. Murtha therefore acted outside the scope of his employment as a Member of the Legislative

Branch. The Government's response to this allegation? Not a word. Accordingly, it has gone unrebutted and must be accepted as true.

      b.      Not one of the other 434 Members of the United States House of Representatives commented on the Haditha criminal investigation. If such was within the scope of a Congressman's duties, that is, to comment on an on-going criminal/military/Executive Branch investigation, other Members of the House of Representatives would have similarly commented. Notably, even the 8 Congressman representing the Districts wherein each of the 8 Haditha Marines resided made no statements.

The Government merely makes the conclusory argument that this fact is "legally meaningless" and offers no analysis. If making conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch is within the scope of employment of a United States Congressperson, why did none of the other 434 Members of the United States House of Representatives so comment? Because doing so is not within their scope of employment.

      c.      Not one of 100 United States Senators commented on the on-going criminal investigation. This is further evidence that it is not within the duties of a Member of the Legislative Branch to comment on an on-going criminal investigation performed by the Executive Branch.

If making conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch is within the scope of employment of a United States Congressperson, why did 0 of 100 U.S. Senators so comment? Because doing so is not within their scope of employment.

      d.      Murtha's conclusory statements were also quasi-judicial in nature, in that he was finding the Plaintiff guilty/convicting him of murder. In so doing, Murtha left the purview of the Legislative Branch and improperly trespassed into the Judicial Branch as well.

Although there is no Pennsylvania case law precedent on point as to this allegation, it is without question that Murtha's statements were judicial/quasi-judicial in nature. Murtha not only made clear that he was making statements of fact, not opinion, he further emphasized that the source of his information was from members of the Executive Branch who were conducting the investigation of Sharratt. It is most certainly outside the scope of a U.S. Congressman's employment to make judicial/quasi-judicial statements about the guilt/innocence of a Serviceman facing prosecution in the Courts of Military Justice for murder. The Government's response to this allegation? Not a word.

      e.      Murtha's repeatedly making false statements that the Plaintiff was a "cold-blooded murderer" and comparing the alleged Haditha Incident to the infamous My Lei massacre of Vietnam was utterly outrageous.

Pennsylvania law has long held that when an act is done in the course of one's employment to accomplish an authorized result, but it is done in an outrageous manner, it is not done within the scope of employment. <u>McMaster vs. Reale</u>, 110 A. 2d 831 (Pa. Super. 1955); <u>Potter Title and Trust Company vs. Knox</u>, 113 A. 2d 549 (Pa. 1955); <u>Brezinski vs. World Truck Transfer, Inc</u>., 755 A.2d 36 (Pa. Super. 2000). Here, Murtha repeatedly called the eight Haditha Marines "cold-blooded murderers" and compared the Haditha incident to My Lei. This was outrageous. Accordingly, even if it were within the scope of Murtha's duties as a Congressman, the manner in which Murtha went about it, described above, is so outrageous that it cannot be deemed to have been within the scope of his job.

f. If Murtha had legitimate intentions/objectives, the fashion in which he attempted to achieve these objectives was completely outrageous.

Pennsylvania law has long held that when an act is done in the course of one's employment to accomplish an authorized result, but it is done in an outrageous manner, it is not done within the scope of employment. McMaster vs. Reale, 110 A. 2d 831 (Pa. Super. 1955); Potter Title and Trust Company vs. Knox, 113 A. 2d 549 (Pa. 1955); Brezinski vs. World Truck Transfer, Inc., 755 A.2d 36 (Pa. Super. 2000). Here, Murtha repeatedly called the eight Haditha Marines "cold-blooded murderers" and compared the Haditha incident to My Lei. This was outrageous. Accordingly, even if it were within the scope of Murtha's duties as a Congressman, the manner in which Murtha went about it, described above, is so outrageous that it cannot be deemed to have been within the scope of his job.

g. Murtha's employer was the constituents of the 12th Legislative District of Pennsylvania. Murtha's constituents at no time granted him authority to comment on an on-going criminal investigation performed by the Executive Branch, particularly in such an outrageous, inappropriate fashion.

Pennsylvania law holds that conduct of a servant is not within the scope of employment if it is different in kind from that authorized. Winward vs. Rhodewalt, 198 A. 2d 623 (Pa. Super. 1964). Murtha had no authority to do what he did. He is not a Member of the Executive Branch. He was not a prosecutor working on Sharratt's Court-Martial. He was not an investigator working with or for the prosecution. The constituents of the 12th Congressional District did not and would not, ever, authorize Murtha to appear on National television and repeatedly make conclusory statements of fact as to the guilt of a U.S. serviceman facing murder charges. The Government's response to this allegation? Not a word. Accordingly, it was gone unrebutted and must therefore be accepted as true.

11

    h.        Murtha's conduct constituted willful misconduct, which is defined as exhibiting a disregard for the standards of behavior that his employer – the constituents of his Legislative District - can rightfully expect of an employee. Murtha disregarded the standard of behavior expected of a sitting United States Congressman by repeatedly and unnecessarily making false, reckless statements which imputed criminal liability to a U.S. Marine - who had yet to even be charged with a crime.

John Murtha is an employee of the Constituents of the 12th Congressional District of the Commonwealth of Pennsylvania. Murtha's conduct constituted willful misconduct, which is defined as exhibiting a disregard for the standards of behavior that his employer – the constituents of his Legislative District - can rightfully expect of an employee. **Title 42 P.S. Section 8550, Willful misconduct.** Murtha disregarded the standard of behavior expected of a sitting United States Congressman by repeatedly and unnecessarily making false, reckless statements which imputed criminal liability to a U.S. Marine - who had yet to even be charged with a crime. Further, Murtha acted with malice, which is a separate violation of **Title 42 P.S. Section 8550.** Accordingly, under **Title 42 P.S. Section 8550, Willful misconduct.**, Murtha was acting outside the scope of his employment when he repeatedly committed slander per se.

    i.        Murtha's repeated making of false, reckless, defamatory statements constituted an unlawful act(s), violating Sharratt's rights guaranteed him in the United States Constitution to the presumption of innocence embodied in the Sixth Amendment's Right to a Fair Trial.

In <u>Mauk vs. Wright</u>, 367 F. Supp. 961 (M.D. Pa. 1973), it was held that under Pennsylvania law, a course of employment permits minor deviations from assigned tasks which do not constitute unlawful acts. However, it was unlawful for Murtha to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch. Specifically, in so doing, Murtha violated Sharratt's Right to the Presumption of Innocence embodied in the 6th Amendment to the United States Constitution. Thus, under Pennsylvania law,

12

Murtha committed an unlawful act and therefore acted outside the scope of his employment.

      j.      Murtha's repeated making of false, reckless, defamatory statements constituted an unlawful act(s), violating Sharratt's rights guaranteed him in the United States Constitution to due process of law contained in the Fifth and Fourteenth Amendments.

In <u>Mauk vs. Wright</u>, 367 F. Supp. 961 (M.D. Pa. 1973), it was held that under Pennsylvania law, a course of employment permits minor deviations from assigned tasks so long as they do not constitute unlawful acts. It was unlawful for Murtha to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch. Specifically, in so doing, Murtha violated Sharratt's Right to Due Process before his reputation, in which Sharratt has a property right, was permanently smeared. Thus, again, under Pennsylvania law, Murtha committed an unlawful act and therefore must be deemed to have acted outside the scope of his employment.

      k.      Murtha's behavior was completely irresponsible and unreasonable.

Pennsylvania law has long held that a deviation from the line of duty may be so great that the act of the employee cannot properly be said to be within the scope of the servant's employment. <u>Howard vs. Zaney Bar</u>, 85 A. 2d 401 (Pa. 1952). In light of the outrageousness of what Murtha did, such must be the case here.

      l.      It is wholly foreign to employment as a member of the Legislative Branch to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch.

In <u>Mauk vs. Wright</u>, 367 F. Supp. 961 (M.D. Pa. 1973), it was held that under Pennsylvania law, a course of employment permits minor deviations from assigned tasks which

13

do not constitute abandonment and are not wholly foreign to the employment. It is certainly wholly foreign to employment as a member of the Legislative Branch to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch. Thus, under Pennsylvania law, Murtha acted outside the scope of his employment.

    m.    Murtha's behavior was motivated by solely, wholly and purely personal reasons, specifically, in an attempt to obtain the House Majority Leader Position which he lost to Representative Steny Hoyer. House Speaker Nancy Pelosi backed Murtha over Hoyer, and Murtha's conduct was done in an effort to curry favor with Pelosi, win this seat and further his political career. In conjunction, Murtha's defamatory statements were not within the scope of his employment as a member of the Legislative Branch as explained in subparagraph a., above.

If Murtha did act solely for personal gain, his conduct would be deemed outside the scope of his employment.

In sum, there is overwhelming authority that Murtha, under Pennsylvania law, acted outside the scope of his employment when he engaged in the at-issue conduct. Accordingly, it is clear that the Government's Motion must be denied.

<u>The Third Circuit has held that the Tort of False Light Invasion of Privacy is not subsumed within the exemption section of the Federal Torts Claims Act, Title 28 U.S.C. Section 2680(h).</u>

The Third Circuit in <u>Quinones vs. United States</u>, 492 F.2d 1269 (3rd Cir. 1974) and <u>O'Donnell vs. United States</u>, 891 F. 2d 1079 (3rd Cir. 1989) has held that the Tort of Invasion of Privacy is not subsumed within the exemption section of the Federal Torts Claims Act, Title 28 U.S.C. Section 2680(h). Therefore, Sharratt is entitled to proceed on his False Light Invasion of Privacy cause of action no matter what. The Government contends that Sharratt's Amended

Complaint does not state a cause of action for false light invasion of privacy. A fair construction of the Count as plead in conjunction with the paragraphs incorporated by reference from the rest of the Complaint shows that it does.

Accordingly, under Third Circuit precedent, at minimum, Sharratt is permitted to proceed on this cause of action no matter what.

<u>Sharratt was not required to exhaust any Administrative remedies before filing the instant action.</u>

The Government lastly asserts that Sharratt was required to file an administrative claim with the appropriate administrative agency before filing his lawsuit. The Government is wrong. **Title 28 U.S.C. Section 2675(a), Disposition by federal agency as prerequisite; evidence,** in pertinent part, states:

> *"An action shall not be instituted* upon a claim *against the United States* for money damages for injury or loss of property or personal injury or death *caused by* the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail…" *(Emphasis added).*

Sharratt has not sued the United States. Furthermore, Murtha was not acting within the scope of his employment when he engaged in the at-issue conduct. Therefore, Sharratt had no obligation to file an administrative claim with any Federal agency.

15

**WHEREFORE**, because

(1) Sharratt's Amended Complaint is easily distinguishable from Wuterich's woefully deficient Complaint in that Sharratt's Complaint contains numerous allegations of fact which satisfy the Notice pleading requirements of **Federal Rule of Civil Procedure 8(a)**; and

(2) Pennsylvania law deems John Murtha to have acted outside the scope of his employment if any of the allegations in paragraph 46. of the Amended Complaint are taken as true, Sharratt has successfully rebutted the Government's Westfall Certification, and this Court is constrained to **DENY** the Government's Motion to Substitute the United States as a Defendant for John Murtha.

                                             Respectfully submitted,

June 19, 2009                                       /s/ Noah Geary
                                                   Noah Geary, Esquire
                                                   Attorney for Plaintiff
                                                   225 Washington Trust Building
                                                   Washington, PA 15301
                                                   (724) 222-3788
                                                   PA I.D. # 78283

# CERTIFICATE OF SERVICE.

I, Noah Geary, hereby certify that I served the foregoing **Brief in Opposition** upon Defense Counsel, Paul Werner, Esquire, on this day, via email:

Paul E. Werner, Esquire
U.S. Department of Justice
1425 New York Avenue, N.W.
Washington, DC 20005
paul.werner@usdoj.gov

Date: June 19, 2009                                                         /s/ Noah Geary
                                                                            Noah Geary, Esquire
                                                                            Attorney for Plaintiff
                                                                            225 Washington Trust Building
                                                                            Washington, PA 15301
                                                                            (724) 222-3788
                                                                            PA I.D. # 78283