**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF**
**PENNSYLVANIA**

| | |
|---|---|
| **JUSTIN SHARRATT** <br> 1348 Lucia Drive <br> Canonsburg, Pennsylvania 15317 <br><br> Plaintiff, <br><br> vs. <br><br> **JOHN MURTHA**, <br> in his individual capacity, <br> 2238 Woodcrest Drive <br> Johnstown, Pennsylvania 15905 <br><br> Defendant. | **Civil Action No**. 3:08 – cv – 229 <br><br> **RESPONSE BRIEF TO DEFENDANT'S REPLY BRIEF.** <br><br> **FILED BY: JUSTIN SHARRATT** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY BRIEF.**

**AND NOW COMES** Justin Sharratt, who responds as follows:

<u>The Government erroneously contends at page nine of its Reply Brief that Sharratt's Bivens claims are in the "abstract".</u>

The Government somehow contends at page nine of its Reply Brief that Sharratt's Bivens claims are in the "abstract". "Abstract" is defined in Webster's dictionary as "thought of apart from any particular instance". Here, Sharratt has specifically plead that John Murtha stated that it was a fact that Sharratt and his 7 Haditha comrades murdered innocent Iraqi women and children "in cold blood". This is while a criminal investigation of Sharratt and his 7 comrades was pending. Murtha further went beyond the pale and compared the supposed Haditha "murders" to the infamous My Lei Massacre of Vietnam, where women were raped, gang-raped, and shot to death, children were shot to death, and bodies mutilated.

1

Sharratt plead that by making these statements, Murtha violated Sharratt's right embodied in the Sixth Amendment right to a fair trial to the presumption of innocence. The presumption of innocence attached when the investigated against Sharratt commenced. It was in existence when Sharratt was initially charged with three counts of unpremeditated murder. It was a right to which Sharratt was entitled while his Article 32 Hearing was pending after receipt of the charges. It existed at the commencement of Sharratt's Article 32 Hearing. Sharratt's right to the presumption of innocence was still in existence after the Article 32 hearing, until his charges were dropped.

Here, Murtha made his slanderous statements starting in March of 2006. Sharratt was already under investigation in March of 2006. Sharratt was not charged until December 21, 2006. His charges were not dismissed until August 8, 2007. This is a period of a year and a half when Sharratt experienced great stress, distress, anxiety and worry that he would be convicted of murder because of Murtha's Nationally-televised slanderous statements of fact that Sharratt was, in fact, guilty of murdering innocent women and children. The stress, distress, anxiety and worry which Sharratt, in fact, experienced was very real, and are cognizable injuries for which he is entitled to money damages.

The Government claimed in its Reply Brief that Sharratt's <u>Bivens</u> claim of a violation of his Sixth Amendment right to a fair trial and specifically his right to the Presumption of Innocence is in the "abstract". How is this is the "abstract"? Exactly what about this allegation is in the "abstract"? The Government never explains.

Sharratt further plead that he has a property right in his reputation which Murtha forever smeared and stained by calling him a murderer of innocent women and children. Again, what about this is "abstract"? Sharratt further plead that his inherent right guaranteed him in Article I,

Section I of the Pennsylvania Constitution to the pursuit of happiness was violated when, for example, he would go out into his community, and, as one example, was assaulted in the bathroom of a bowling alley as a result of Murtha's statements. Again, what about this is "in the abstract"? The Government never says. Case law, speaking to what is a "clearly-established" right for purposes of qualified immunity, states:

> "[I]t is important to emphasize that this [clearly-established] inquiry must be undertaken *in light of the specific context of the case*, not as a broad general proposition".

McKee vs. Hart, 436 F.3d 165 (3rd Cir. 2006)*(Emphasis not added)*.

Sharratt has plead with great specificity the rights which were violated, how they are clearly-established rights, and how John Murtha violated them. How are Sharratt's allegations of fact not specific enough? The Government never explains. How could Sharratt's allegations be any **more** specific? Throughout its Briefs, the Government avoids meeting any issue head-on. Again and again, it throws out a contention and some general principles of law, then moves to its next target, never connecting the two or completing a thought or idea.

Significantly, all eight of the eight Marines involved in the Haditha "incident" were absolved of any wrongdoing. Again, just one example, as taken from Sharratt's Complaint, of the incredibly inappropriate statements Murtha made went as follows:

*Wolf Blitzer*: "[Y]ou've suggested this week that there in effect was a massacre.

*John Murtha*: **"Well there was. There's no question about it…When this thing's all over, you're going to see exactly what I've said to be true…**

*Anderson Cooper*: "How are you so sure at this point? The investigation isn't even complete".

3

*John Murtha*:  **"Anderson, let me tell you something…There was no hostile fire. There was nobody firing at our Marines…They went into the rooms and killed women and children".**

(See Complaint, **emphasis added** here).

After each of the eight Marines' Article 32 Hearings, all charges were dismissed for lack of evidence. Lt. Col. Jeffrey Chessani: charges dismissed. Lt. Andrew Grayson: charges dismissed. L.Cpl. Stephen Tatum: charges dismissed. Capt. Lucas McConnell: charges dismissed. Capt. Randy Stone: charges dismissed. SSgt. Frank Wuterich: charges dismissed. Sgt. Sanick Dela Cruz: charges Dismissed. Lance Corporal Justin Sharratt: charges dismissed.

On August 8, 2007, Sharratt received a letter from Major General James N. Mattis of the United States Marine Corps. General Mattis wrote, ironically, in pertinent part:

> " I recognize that you have been through a most difficult experience. I am optimistic that you remained aware that you were, and have always been entitled to, and received the benefit of, the presumption of innocence that is the bedrock of our military justice system…
> …And as you have always remained cloaked in the presumption of innocence, with this dismissal of charges, you remain in the eyes of the law – and in my eyes - innocent."
> (Signed)
>
> J.N. Mattis

<u>The Government, on page 2 of its Reply Brief, claims that Sharratt "misunderstands" the standard for qualified immunity. To the contrary, the Government fails to grasp that the Defendant is not entitled to the defense of qualified immunity.</u>

The Government claims that Sharratt "misunderstands" the standard for qualified immunity. Yet the Government fails to explain how Sharratt "misunderstands" the doctrine. What Sharratt does not understand is precisely how the Defendant is entitled to the defense of

4

qualified immunity. The Government never said. Is the Government's position that John Murtha was not aware of the Presumption of Innocence? Is the Government's position that John Murtha never heard of the Sixth Amendment's right to a fair trial? Is the Government's argument that the Presumption of Innocence, a fundamental, sacred right upon which this country was founded, was not *clearly-established* in March of 2006?

<u>The Government further misstates the law of qualified immunity at page 9 when it claims that there must be case law precedent in existence for a right to be "clearly-established".</u>

The Government claims that for a right to be "clearly-established" in the qualified immunity analysis, the right must be embodied in case law precedent and must have been previously held to be unlawful. The Government is wrong. The Supreme Court of the United States rejected this argument twenty years ago:

> "[T]he unlawfulness of the contested action
> must be apparent in the light of the pre-existing law
> although the very action in question need not have been
> previously held unlawful."
>
> <u>Anderson vs. Creighton</u>, 483 U.S. 635; 107 S.Ct. 3034; 97 L.Ed. 2d 523 (1987) at 639.

> "A plaintiff need not show that the very action
> in question has previously been held unlawful,
> but needs to show that in light of pre-existing law
> the unlawfulness was apparent."
>
> <u>McLaughlin vs. Watson</u>, 271 F.3d 566 (3rd Cir. 2001).

It is *not* a requirement that the clearly-established right be derived from *case law*. It can be a right contained in a Statute or in the Constitution. A "clearly-established" right has been defined as follows:

5

> "The contours of the right must be sufficiently
> clear that a reasonable official would understand
> that what he is doing violates that right."

Forbes vs. Township of Lower Merion, 313 F.3d 144, (3rd Cir. 2002).

The issue is thus: Would a reasonable member of the United States Congress understand that stating that Sharratt in fact murdered women and children pending a criminal investigation was violating Sharratt's right to the presumption of innocence? Of course, any reasonable member of Congress would so understand. This is why 0 out of 100 United States Senators made such statements. This is also why 0 of the other 434 Members of the House of Representatives made such statements. This is fairly simple. The Defendant is not entitled to the defense of qualified immunity. Sharratt has articulated constitutional rights, which were clearly-established, which any reasonable federal official would know they were violating by endlessly going on National television and radio and saying that as a matter of fact, Sharratt was guilty of murder. The Government points out that determining whether this Defendant is entitled to the defense of qualified immunity should be resolved at the earliest stage of litigation. Plaintiff agrees. The Defendant is clearly not entitled to the defense of qualified immunity.

<u>Lastly, the rationale behind the defense of qualified immunity clearly demonstrates why the Defendant is not entitled to the defense.</u>

The Supreme Court of the United States has recently re-emphasized:

> "The concept of qualified immunity balances
> two important interests – the need to hold public
> officials accountable when they exercise power
> irresponsibly and the need to shield officials from
> harassment, distraction and liability when they perform
> their duties reasonably".

Pearson vs. Afton Callahan, 129 S.Ct. 808; 172 L.Ed.2d 565 (2009).

6

First, here the Supreme Court underscores the point that public officials *can* be held accountable when they exercise power irresponsibly. It is without question that Murtha exercised his power irresponsibly. Nor did Murtha act reasonably. Thus, considering the rationale behind the defense of qualified immunity, Murtha is not entitled to invoke the defense because he certainly acted both (i) irresponsibly and (ii) unreasonably.

<u>Sharratt's Amended Complaint is easily distinguishable from the Complaint filed in the case cited at page 4 of the Government's Reply Brief, Iqbal vs. United States 129 S.Ct. 1937; 173 L.Ed. 2d 868 (2009).</u>

Sharratt's Amended Complaint is easily distinguishable from the Complaint filed in <u>Iqbal vs. United States</u> 129 S.Ct. 1937; 173 L.Ed. 2d 868 (2009), a case cited by the Government in its Reply Brief at page 4.

The law is clear:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim **that is plausible on its face**…[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."**(Emphasis added).**

<u>Id</u>., at 884.

The allegations in the <u>Iqbal</u> complaint read as follows:

> "…[P]etitioners designated respondent a person of high interest on account of his race, religion, or national origin in contravention of the First and Fifth Amendments to the Constitution…"

> "[P]etitioners…subject[ed] [Plaintiff] to harsh conditions of confinement as a matter of policy solely on his religion, race and/or national origin…"

7

Iqbal, at 878.

In truth, these *are* bald assertions with no corresponding factual allegations setting forth how or why the actions were motivated by racial or religious animus.

In contrast, Sharratt pled facts, that if true, establish that Murtha acted outside the scope of his employment. Subparts a-m. of Paragraph 46. of the Amended Complaint are not conclusions of law. A thorough reading clearly shows allegations of fact, and Sharratt's Amended Complaint is easily distinguishable from the bald allegations in the Iqbal case.

Sharratt's Amended Complaint easily meets the low standard of setting forth a claim that is plausible on its face. This Court is also reminded that it is required to view the factual allegations in the light most favorable to Sharratt, and is required to give Sharratt the benefit of all reasonable inferences therefrom. Considering (1) the low threshold Sharratt must satisfy; plus (2) reading the Amended Complaint in the light most favorable to Sharratt; plus (3) accepting as true all factual allegations; plus (4) giving Sharratt the benefit of all reasonable inferences therefrom, Sharratt's Complaint certainly states claims that are, at absolute minimum, plausible on their face. This is a non-issue.

Interestingly, the Government is gifted the fiction of having "prima facie evidence" that John Murtha acted within the scope of this employment for purposes of Sovereign Immunity by submitting a one sentence "Certification" stating that "John Murtha was at all times acting within the scope of this employment" – which is a wholly unsupported, unsubstantiated, pure legal conclusion. The Government then labels Sharratt's allegations of actual fact as "legal conclusions" and moves to dismiss Sharratt's state law claims. Sharratt's Complaint alleges facts, not legal conclusions.

### The Government fails to cite any authority that Pennsylvania scope of employment law does not govern the issue of whether or not the Defendant acted outside the scope of his employment.

At page three of its Reply Brief, the Government claims that Sharratt's assertion that scope of employment issues are, under Pennsylvania law, issues for the peculiar and exclusive province of a jury is "misplaced". First, the Government fails to cite any authority that Pennsylvania scope of employment law does not govern the issue of whether or not the Defendant acted outside the scope of his employment. Second, the Government makes the incredibly weak argument that "none of the cases cited by Sharratt involves substitution of the United States for state tort claims against a federal official". However, as the Government well knows, all Federal law on the subject, including every case cited in the Government's Briefs states that the employment law of the State in question – here, Pennsylvania – controls the issue. This is the undisputed state of the law on this issue.

### Even President William Jefferson Clinton had to defend a sexual harassment suit while sitting and acting as President of the United States.

Even William Jefferson Clinton had to defend a sexual harassment suit while sitting as the acting President of the United States. Is John Murtha somehow more powerful than the President of the United States?

### Murtha's defamatory statements imputed criminal liability to Sharratt, whose name was broadcast, printed, re-broadcast and re-printed thousands of times throughout not only the United States but the world.

As a final point of clarification, although Murtha did not reference Sharratt by name, he continually referred to the Marines involved in the Haditha incident as those who massacred innocent women and children, and committed "cold-blooded murder". It is undisputed fact that

9

there were 8 and only 8 Marines involved in this skirmish, whose names are listed earlier in this Brief. Sharratt was one of the 8, and his name was endlessly printed, re-printed, broadcast and re-broadcast in the National news, print, television and radio, throughout the Western District of Pennsylvania, throughout the United States and throughout the world. The Government concedes this point.

## CONCLUSION.

The inconvenient reality for the Government here is that Mr. Sharratt, with regard to *both* his Bivens claims and his state law tort claims, has a case against Mr. Murtha. The Government's Motions each lack merit, and must be **DENIED.**

Respectfully submitted,

July 3, 2009
/s/ Noah Geary
Noah Geary, Esquire
Attorney for Plaintiff
225 Washington Trust Building
Washington, PA 15301
(724) 222-3788
PA I.D. # 78283

## CERTIFICATE OF SERVICE.

I, Noah Geary, hereby certify that I served the foregoing **RESPONSE TO REPLY BRIEF** upon Defense Counsel, Paul Werner, Esquire, on this day, via email:

Paul E. Werner, Esquire
U.S. Department of Justice
1425 New York Avenue, N.W.
Washington, DC 20005
paul.werner@usdoj.gov

Date: July 3, 2009 /s/ Noah Geary
Noah Geary, Esquire
Attorney for Plaintiff
225 Washington Trust Building
Washington, PA 15301
(724) 222-3788
PA I.D. # 78283