# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN SHARRATT, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION No. 3: 2008-229 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN MURTHA and | ) | |
| the UNITED STATES of AMERICA, | ) | JUDGE GIBSON |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Plaintiff's opposition to substitution of the United States for John Murtha as a party as set forth in Plaintiff's Response (Document No. 24), Brief in Opposition (Document No. 23) and the Plaintiff's sur-reply brief (Document No. 33). The Court previously entered an order (Document No. 16) granting the United States' Motion to Substitute Party (Document No. 12) in accordance with the United States' certification pursuant to 28 U.S.C. § 2679(d)(1). The Plaintiff had failed to timely respond to this motion in accordance with this Court's practices and procedures. The Plaintiff's arguments which are reviewed in this opinion were set forth in a Response and Brief which were permitted to be filed on the record after the Court granted the Plaintiff's motion for reconsideration of the decision to permit substitution of the United States for John Murtha as a party. The Plaintiff was later granted leave to file a sur-reply brief on July 1, 2009. The Plaintiff offers argument against substituting the United States as a party for the Defendant John Murtha for Counts IV, V and VI of the Plaintiff's complaint. These counts allege Pennsylvania state common

law claims of slander per se, invasion of privacy (false light) and intentional infliction of emotional distress respectively.

The United States in its original motion and supporting brief revealed that the Director of the Torts Branch of the Civil Division of the United States Department of Justice certified that Defendant Murtha was acting within the scope of his federal employment when making the comments that are the bases of the claims at Counts IV, V and VI of the Complaint. *See* 28 C.F.R. § 15.4 (recognizing the Director as an official who can make the statutory certification).

> The scope of certification is prima facie evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive. Thus a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it. If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on certification, pleadings, documentary evidence, and affidavits.

*Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992). The Plaintiff refers to paragraph 46 of his Amended Complaint in support of his motion for reconsideration on this issue. The Plaintiff in his brief (Document No. 23) attempts to differentiate his civil action from that of his fellow Marine Frank Wuterich, whose civil action was eventually dismissed after a finding by the Court of Appeals for the District of Columbia Circuit that Congressman Murtha, who was the defendant in the Wuterich action, was properly substituted with the United States after the same § 2679(d)(1) certification by the Department of Justice. *See Wuterich v. Murtha*, 562 F.3d 375 (D.C.Cir. 2009). The Plaintiff suggests his Amended Complaint pleads sufficient facts that the *Wuterich* complaint did not. Plaintiff's Brief, p. 4. The Plaintiff offers only paragraph 46 of his Amended Complaint as a basis for rebutting the certification. Each of Plaintiff's claims will be addressed in turn.

2

The Defendant's scope of employment is determined by the law of the place where his acts (public comments) occurred. The parties agree for the purposes of this civil action that Pennsylvania law applies to determine the scope of employment. United States' Reply (Document No. 30), p. 5, Plaintiff's Brief (Document No. 23), pp. 7-8.[1]

> Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct "within the scope of employment." *See Butler v. Flo-Ron Vending Co.*, 383 Pa.Super. 633, 646, 557 A.2d 730 (Pa.Super.1989); *Aliota v. Graham*, 984 F.2d 1350, 1358 (3rd Cir.1993). According to the Restatement, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...." Restatement (Second) Agency § 228.

*Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000).[2]

---

[1] It is clear from the Amended Complaint that certain public comments were not made in Pennsylvania in that one quotation of the Defendant indicates that his remarks were made in Washington, D.C. However, it is acknowledged that the law of Washington, D.C. recognizes that the Restatement (Second) of Agency § 228 defines what is within the scope of employment for acts committed within the District. *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C.Cir. 2006). Since Pennsylvania also has adopted Restatement (Second) of Agency § 228 this fact will not change the scope of employment analysis.

[2] The entirety of the Restatement (Second) of Agency § 228 is not included in this quote, that is subsection (1)(d) is excluded as it is inapplicable. The entire section is reproduced here:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958).

3

Aside from the *Wuterich* case, another matter addressing comments made by a congressman and whether they are within the scope of his employment came in *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C.Cir. 2006). The court found that comments of a congressman made in a telephone call to a newspaper reporter regarding the congressman's marital separation were made within the scope of his employment. *Id.* at 664. The comment at issue in *Ballenger* was that his wife was "uncomfortable living across the street from the headquarters of the [plaintiff]" and that the plaintiff "was the 'fund-raising arm for Hezbollah.'" *Id.* at 662. The Court found in favor of the congressman concluding his telephone call was within his scope of employment: "Speaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's 'authorized duties.'...Cognizant that under D.C. law, this prong is 'liberally construe[d],'...we hold that Ballenger's allegedly defamatory statement was incidental to the kind of conduct he was employed to perform." *Id.* at 664-665(internal citations omitted). The *Ballenger* court in turning to the first element under § 228(1)(a) characterized the issue without reference to the statements made:

> The proper inquiry in this case "focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." Here the "underlying dispute or controversy" was the phone call between Ballenger and Funk discussing the marital separation. The appropriate question, then, is whether that telephone conversation-not the allegedly defamatory sentence-was the kind of conduct Ballenger was employed to perform.

*Ballenger* at 664(internal citations omitted). In the case *sub judice*, Defendant Murtha made comments on news programs and to news outlets that were televised and repeated by news outlets across the

4

country. The comments alleged the murder of innocent civilians by United States Marines in Haditha, Iraq in November 2005. Clearly these comments were made in the arena of the public press and not in the context of legislation. Speaking to the press is part of a congressman's employment in this time and age, particularly events as a result of the Executive's execution of policy funded with the approval of Congress. Speaking to the press is the typical manner in which congressmen set forth their positions and agenda to their constituents. The Plaintiff has failed to establish why speaking to the press regarding events being reported in the news is not part of the Defendant's employment as a congressman.

Regarding the second element of § 228 of the Restatement (Second) of Agency, that of the time and space limits of when the Defendant Murtha's actions occurred, the Plaintiff has not put forth any evidence that establishes the Defendant was outside of any time or space limit that may exist for a congressman. Therefore, this factor also favors allowing substitution.

Turning to the third factor, the Plaintiff suggests that political motivations of the Defendant were the impetus for his comments. These political motivations are alleged by the Plaintiff to be the Defendant's disagreement with the continued war in Iraq and his personal desire to gain a leadership position should his political party win a majority of congressional seats in the then forthcoming election. The Plaintiff's first basis, that the Defendant cannot comment to the press on a matter being reported in the news regarding allegations against members of the armed forces who were in combat because he was a legislator, not a prosecutor or other officer of the executive branch lacks merit. The actions of the armed forces while engaged in combat are newsworthy for any citizen of the United States. To suggest that legislators cannot speak to the press about the actions of the executive branch is to limit

5

a legislator's ability to speak to his constituents and the public-at-large regarding actions of their Government. To assert that a congressman who plays a part in the republican form of government through which appropriations of the armed forces are made cannot comment on the alleged actions of the armed forces is unsupportable under the circumstances existing in this case. The manner in which the Defendant asserted his knowledge of the alleged incident is irrelevant. As *Ballenger* suggests, the scope of employment is determined by the "underlying dispute or controversy" not the actual tort alleged. Indeed, the Defendant made comments in the media and responded to questions from the media regarding a news event in a time of war. Regardless whether the Defendant proceeded with his comments to curry favor with his constituents or his fellow congressmen, speaking to the media in general is an employment related task of a congressman as it allows him to put forth his positions on events that have potential political repercussions for him and this nation. The Court makes no comment regarding the propriety or wisdom of the Defendant's comments, but the fact that they were made and they concerned a policy matter of our Government clearly establish they are within the scope of the congressman's employment.

The Plaintiff's argument that the remaining 434 congressmen and the 100 members of the Senate did not comment on the deaths in Haditha, Iraq is a non sequitur. Such facts do not demonstrate what the scope of employment is for a congressman nor do they demonstrate that such silence was kept to avoid violating the Plaintiff's presumption of innocence at trial. It is clear that there is no one document containing a specific list of a congressman's duties, but there is nothing in the Constitution or federal statutes that requires politicians to speak out on an issue. The absence of comment on an issue does not prove that comment on that same issue is outside of the duties of a congressman.

Furthermore, the Defendant Murtha's comments that the Plaintiff had committed "murder" did not trespass upon the province of the judiciary or a court-martial. Comments to the media, however scathing and hurtful they may be to their subject, have no judicial effect of pronouncing guilt. To suggest that the Defendant trespassed into the realm of the judiciary in making his comments is not a reasonable assertion. Defendant Murtha is well-known as a congressman, not a judge or prosecutor.

The absence of specific authority from his constituents to speak on the deaths in Haditha, Iraq is also not a basis to conclude that the Defendant Murtha's comments are outside the scope of his office of congressman. A congressman's mandate follows from his victory in an election. Our nation is a republic not a pure democracy. For two years a congressman represents the district in which he or she lives. If a congressman had to resort to a referendum by his constituents each time he sought to make comments to the press, our republican form of democracy would grind to a halt. The assertion that Defendant Murtha did not obtain specific authority from his constituents to speak on this issue and therefore he was not acting in the capacity of a congressman is clearly not a sustainable position. The authority of Defendant Murtha to speak to the press on this issue derives from his election. Should his constituents disagree with his comments, they are free to exercise their first amendment freedoms by contacting the congressman or organizing to defeat him in the next election.

In paragraph 46, subparagraphs e, f, g, h, i, j and k of the Amended Complaint, the Plaintiff offers legal conclusions and evaluations of Defendant Murtha's actions but presents no facts upon which this Court can find that the Government's certification is rebutted.

As for subparagraphs a, b, c, l and m of paragraph 46, these allegations, to the extent that they include facts, do not establish that Defendant Murtha performed matters outside of the scope of his

7

employment without any motivation to serve his master. In *Wuterich v. Murtha*, the District of Columbia Circuit Court cited *Ballenger* in recognition of what is considered part of a congressman's job: "a congressman's 'ability to do his job as a legislator effectively is tied, as in this case, to the Member's relationship with the public and in particular his constituents and colleagues in the Congress.'" *Wuterich v. Murtha*, 562 F.3d 375, 385 (D.C. Cir. 2009)(internal citation omitted). Indeed, the Defendant's position as a congressman, in addition to his leadership position within the House of Representatives on "the Appropriations Committee's Subcommittee on Defense", *Wuterich* at 385, certainly provides the basis from which the Defendant may speak out regarding events occurring during the execution of military actions. Even when motivated by the advancement of their own political careers, congressmen may also advance the interest of their constituents. *See Operation Rescue Nat'l v. United States*, 975 F.Supp. 92, 108 (D.Mass. 2007). Whether motivated by furthering his constituents' interest, his own personal success or that of his political party, Defendant Murtha's comments to the media are sufficiently "actuated...by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958).

In conclusion, the Court does not find that the Plaintiff has alleged sufficient facts within his Amended Complaint to rebut the certification of the Department of Justice under 28 U.S.C. § 2679(d)(1).

AND NOW, this 10th day of July, 2009 in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Court's Order of June 3, 2009 (Document No. 16), remains in effect and the United States remains the sole Defendant as to Counts IV, V and VI having replaced John Murtha as to these counts.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**