IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN SHARRATT, ) | |
|        Plaintiff, ) | |
| v. ) | CIVIL NO. 3:2008-229 |
| ) | |
| JOHN MURTHA and, ) | JUDGE GIBSON |
| the UNITED STATES OF AMERICA, ) | |
|        Defendants. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on Defendants' Motion to Dismiss (Document No. 14). Plaintiff filed a Brief in Opposition to the Defendants' Motion to Dismiss (Document No. 25). The Court now resolves the Motion to Dismiss.

**Background**

Defendant, the late Congressman John Murtha ("Murtha") represented the 12th Congressional District of Pennsylvania from February 5, 1974 until he passed away on February 8, 2010. In 2006, Murtha became a leading vocal critic of President Bush's prosecution of the War in Iraq. While most of his censures were directed at the President, and other government officials, starting in May of 2006, Murtha aimed his criticisms at a squad of Marines involved in an incident at Haditha, Iraq, in which Iraqi civilians were killed. Plaintiff Justin Sharratt, a Lance Corporal in the United States Marine Corps was identified as one of eight Marines in that squad. In interviews with the media, Murtha made allegedly defamatory statements about Sharratt's squad, claiming that these Marines "killed innocent civilians in cold blood." These allegedly

1

defamatory statements were later found to be inaccurate with regard to Justin Sharratt by the investigating officer, Marine Lt. Col. Paul Ware, a military judge, who recommended that criminal charges be dropped against Lance Cpl. Justin Sharrat, the Plaintiff in this case.[1] The charges were dismissed and Plaintiff was exonerated.[2]

Had someone else made these statements about Sharratt, a slander suit most likely could proceed. However, because of Murtha's unique station in the Congress, the tortiousness of these comments cannot resolve this case. Rather, this case presents the question whether statements Murtha made are shielded by qualified immunity, and whether this court possesses subject matter jurisdiction to entertain these claims.

Sharratt's complaint proffered six counts against Murtha. Counts I, II, and III allege violations of due process, equal protection, and the Sixth Amendment's presumption of innocence. These counts misstate the relevant constitutional standards. They must be dismissed under the doctrine of qualified immunity, and are barred by the statute of limitations.

Counts IV, V, and VI allege slander per se, invasion of privacy, and false light. Under the *Westfall* Act, 28 U.S.C. § 2679, this Court substituted the United States as the party of interest for these Counts. Because Sharratt has not fulfilled the administrative requirements of the

---

[1] Following an Article 32 hearing conducted pursuant to the Uniform Code of Military Justice the investigating officer found that the government's allegations that the Marine executed a group of men were "unsupported and incredible." Lt. Col. Ware found the government's allegations lacking in proof and wrote in the report: "To believe the government version of facts is to disregard clear and convincing evidence to the contrary and sets a dangerous precedent that . . . may encourage others to bear false witness against Marines as a tactic to erode public support of the Marine Corps and mission in Iraq." *See* Josh White, Investigators Urges Clearing of Marine in Killings at Haditha Home, *Washington Post* (7/12/2007), available at http://www.washingtonpost.com/wp-dyn/content/article/2007/07/11/AR2007071100884.html.

[2] Subsequently, all charges against the Plaintiff were dropped. Lt. Gen. James N. Mattis not only cleared Sharratt of legal charges, but also called him "innocent." In a letter to Sharratt, Mattis wrote "with the dismissal of these charges, you may fairly conclude that you did your best to live up to the standards, followed by U.S. fighting men throughout our many wars, in the face of life or death decisions made by you in a matter of seconds in combat." *See* Josh White, Charges Dropped Against 2 Marines in Haditha Killings, *Washington Post* (10/10/2007), available at http://www.washingtonpost.com/wp-dyn/content/article/2007/08/09/AR2007080900696.html.

Federal Tort Claims Act, and the United States has not waived its sovereign immunity, the Court lacks subject matter jurisdiction, and the Court must dismiss these counts.

Without addressing or passing judgment on the propriety or wisdom of Murtha's statements, the Court finds that all claims against Murtha must be dismissed, and will grant Defendants John Murtha and the United States' Motion to Dismiss (Document No.14).

## Jurisdiction

The District Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 as the plaintiff's complaint alleges violation of constitutional rights under 42 U.S.C. § 1983. The Court has jurisdiction over the state law claims pursuant to supplemental jurisdiction under 28 U.S.C. § 1367.

## Legal Standard

The recent decisions of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) represent a radical change in federal pleading standards.[3] In *Iqbal*, the Supreme Court "provide[d] the final nail-in-the-coffin for the 'no set of

---

[3] *See Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) (noting that the plausibility standard in *Twombly* was "a significant change, with broad-reaching implications"); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) ("Few issues in civil procedure jurisprudence are more significant than pleading standards, which are the key that opens access to courts."); Douglas D. Smith, *The Evolution Of A New Pleading Standard: Ashcroft v. Iqbal*, 88 OREGON. L. REV. ___ (2009), available at http://ssrn.com/abstract=1463844 ("*Iqbal* thus represents a logical progression in the march toward greater judicial scrutiny at the outset of the litigation to avoid the inefficiencies and burdens that may be imposed on defendants later in the process."); Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 875 (2009) ("Many judges and academic commentators read the decision as overturning fifty years of generous notice pleading practice, and critics attack it as a sharp departure from the 'liberal ethos' of the Federal Rules, favoring decisions 'on the merits, by jury trial, after full disclosure through discovery."); Edward D. Cavanagh, *Twombly, the Federal Rules of Civil Procedure and the Courts*, 82 ST. JOHN'S L. REV. 877, 878-79 (2008) (arguing that *Twombly* changed the law "dramatically", "put[ting] an end to notice pleading as it has been understood in the seventy years since the enactment of the Federal Rules of Civil Procedure"); Robert L. Rothman, *Twombly and Iqbal: A License to Dismiss*, 35 No. 3 LITIGATION 1, 2 (2009) (arguing that "*Iqbal* drastically changed the landscape for Rule 12(b)(6) motions").

facts' standard"[4] derived from *Conley v. Gibson*.[5] Following *Iqbal*, conclusory or "bare-bones" complaints will not survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

Under *Twombly* and *Iqbal*, in order to survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"*Iqbal*, quoting *Twombly* at 570. In *Iqbal*, Justice Kennedy concluded that a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, citing *Twombly* at 556. "The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009). Following *Iqbal*, the District Court must dismiss a complaint that pleads facts that are "merely consistent with" a defendant's liability, if the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, quoting *Twombly*, at 557.

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009), the Third Circuit provided the test district courts should apply when considering a motion to dismiss under *Iqbal*:

> "Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Iqbal* at 1249. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to

---

[4] *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009). *See also*, Courie v. Alcoa Wheel & Forged Prods., ___ F.3d ___, 2009 WL 2497928, at *2 (6th Cir. Aug. 18, 2009) (the Supreme Court's decision in *Iqbal* "raised the bar for pleading requirements beyond the old 'no-set-of-facts' standard of *Conley v. Gibson*, 355 U.S. 41 (1957)").

[5] *Conley v. Gibson*, 355 U.S. 41 (1957) (permitting district courts to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

4

relief. A complaint has to "show" such an entitlement with its facts. See *Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.*" *Fowler*, at 210-211.

## Analysis

### I. Plaintiff Fails to Allege Constitutional Violations

The doctrine of qualified immunity forecloses liability for civil damages for government officials when performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an *immunity* from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). If immunity attaches, a suit cannot proceed.

Until recently, the Supreme Court held that lower courts should follow a two-step process to consider qualified immunity defenses. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled by Pearson v. Callahan*, 129 S. Ct. 808 (2009). Under the old regime, courts first determined whether, taken in the light most favorable to the plaintiff, the facts alleged showed the official's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the court did not find a violation of a constitutional right, qualified immunity was granted, and the inquiry would end. *Saucier*, 533 U.S. at 201. However, if the court found that a constitutional right was violated, the court would proceed to inquire whether the right was "clearly established" at the time of the alleged violation. *Saucier*, 533 U.S. at 201.

Following the Supreme Court's overruling of *Saucier v. Katz*, 533 U.S. 194, 201 (2001) by *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the courts may now "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S. Ct. at 818. In this case, because Sharratt has failed to allege the violation of any constitutional right, let alone a clearly established one, the "*Saucier* protocol" is "beneficial" to the resolution of this case. *Pearson*, 129 S. Ct. at 818. Because Sharratt does not state the violation of any constitutional rights, let alone any rights that are clearly established, these allegations fail to state a claim, and must be dismissed.

## A. Sharratt has failed to Allege a Violation of the Due Process Clause

Count I alleges that Murtha's allegedly defamatory statements deprived Sharratt of "notice and an opportunity to respond, which violates his Fifth Amendment right to due process of law." Complaint ¶ 24. Further, as a result of Murtha's statements, Sharratt alleges that he "has lost significant employment opportunities" and "significant associational opportunities," which "constitute[] a loss of . . . liberty . . . under the Fifth Amendment." Complaint ¶ 25-26.

The Supreme Court has only found a violation of due process in the context of defamation in the limited circumstances where a plaintiff alleges a harm to reputation and the loss of some additional tangible interest, such as the state-protected ability to purchase alcohol or a liberty interest in retaining government employment. *See Paul v. Davis*, 424 U.S. 693, 708, 710-711 & n.5 (1976); *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1078 (3d Cir. 1997).

While Sharratt alleges that he may have lost future employment opportunities, a mere allegation of a possible loss of employment does not constitute a tangible interest, and is

6

"patently insufficient" to state a due process claim. *See Kelly*, 107 F.3d at 1078 (quoting *Clark v. Township of Falls*, 890 F.2d 611, 620 (3d Cir. 1989)). Sharratt's other vague allegations that he has lost "association opportunities" and "permanent, irreversible damage to his reputation," fail to state a due process claim. Am. Comp. ¶¶ 23, 25-27. *See Paul v. Davis*, 424 U.S. at 712; *Kelly*, 107 F.3d at 1078.

At the most basic level, Sharratt's claim sounds in defamation, but is shrouded in the garb of a constitutional violation. As the Supreme Court found in *Siegert v. Gilley*, "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." 500 U.S. 226, 233 (1991). The Supreme Court has rejected attempts to clothe defamation claims as constitutional claims. *See Siegert*, 500 U.S. 234; *Edwards*, 156 F.3d at 493. The Third Circuit has held that defamation claims brought under *Bivens* "find no basis in our jurisprudence." *Boyanovski v. Capital Area Intermediate Unit*, 215 F.3d 396, 398 (3d Cir. 2000). As such, Sharratt's due process allegations fail to state a claim, and must be dismissed.

### B. Sharratt Has Not Alleged a Violation of the Sixth Amendment

Count II alleges that Murtha's allegedly defamatory statements "stripped Sharratt of the presumption of innocence, poisoned the prospective jury pool, and created a presumption of guilt." Complaint ¶ 31. This deprivation of the presumption of innocence, according to the Complaint, caused Sharratt to suffer "severe emotional distress and permanent damage to his reputation." Complaint ¶ 32. Very simply, the Sixth Amendment applies only to "criminal proceedings." U.S. Const. amend. VI. Having been "exonerated" after an Article 32 hearing, Sharratt is not subject to, and is not facing, any "criminal proceedings." Sharratt states no cognizable injury to his Sixth Amendment rights, and this claim must fail.

### C. Sharratt Has Not Alleged an Equal Protection Claim

Count III alleges that Murtha's allegedly defamatory statements denied Sharratt, "one of Murtha's own constituents – his right under the United States Constitution to the Equal Protection of the laws." Complaint ¶ 36. This violation of equal protection, according to the Complaint, caused Sharratt to suffer "severe emotional distress, permanent damage to his reputation, and other unspecified damages." Complaint ¶ 37.

The essence of an equal protection violation is intentional and irrational differential treatment. In *Village of Willowbrook v. Olech*, the Supreme Court held that a plaintiff states an equal protection claim when he "alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000). To state an *Olech* class of one claim, the Third Circuit has held that a plaintiff must "allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Sharratt makes no allegations whatsoever that Murtha treated him "differently from others similarly situated," as he does not identify any other similarly situated people. *Id.* Furthermore, Murtha's statements never directly mention Sharratt. Failing to satisfy the requirements of *Olech*, there are insufficient facts pleaded to establish an equal protection claim.

### D. Sharratt's Constitutional Claims are Barred by the Statute of Limitations

Additionally, Sharratt filed all of his claims beyond Pennsylvania's statute of limitations. In *Bivens* actions, the district court utilizes the appropriate statute of limitations from state law.

*See Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). The statute of limitations for *Bivens* actions in Pennsylvania is two years. *See* 42 Pa. Const. Ann. § 5524(2) (West 2004); *Smith v. Holtz*, 87 F.3d 108, 111 n.2 (3d Cir. 1996). A cause of action accrues when a plaintiff knew or should have known he was harmed. *See Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Murtha made the allegedly defamatory statements between May 17, 2006 and May 30, 2006. As these statements were disseminated by the mainstream media, Sharratt knew, or should have known he was harmed almost immediately. *See United Klans of Am. v. McGovern*, 621 F.2d 162, 154 (5th Cir. 1980) ("Where events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence."). The two-year statute of limitations accrued in May or June of 2006, and ran in May or June of 2008. But, Sharratt did not file this suit until September 25, 2008, twenty-eight months after Murtha first made these statements. At this point, the statute of limitations had run. Accordingly, Sharratt's constitutional claims will be dismissed as they are barred by the statute of limitation.

## II. The Court Lacks Jurisdiction to Consider Sharratt's State Law Claims.

This court previously substituted the United States as defendant for Counts IV-VI according to the provisions of the *Westfall* Act, 28 U.S.C. § 2679. Count IV alleges that Murtha's comments that Sharratt was a "cold-blooded murderer" constitutes "not mere slander, but slander per se." Complaint ¶ 43. Sharratt further alleges that Murtha's slanderous statements "have caused permanent damage and harm to [his] reputation." Complaint ¶ 45. Count V alleges violations of the tort of invasion of privacy. Plaintiff alleges no facts to satisfy the elements of the tort of invasion of privacy, beyond listing it in the heading for Count V, preceding Complaint

¶ 47. Count V also alleges that Murtha's statements "placed Sharratt in a false light, specifically [finding] that Sharratt was a murderer of innocent women and children." Complaint ¶ 49. Count VI alleges that Murtha's statements were "truly outrageous" and "cause[d] Sharratt severe emotional distress; alternatively the statements were made with recklessness as to their effect." Complaint ¶ 60-61.

As a Sovereign, the United States is immune from any suit unless it chooses to waive its sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). In limited circumstances, under the Federal Tort Claims Act (FTCA) the United States has waived its sovereign immunity for claims for "money damages . . . caused by negligent or wrongful act or omission or any employee of the Government while acting within the scope of his office of employment." 28 U.S.C. § 1346(b); *see* also, *Merando v. United* States, 517 F.3d 160, 164 (3d Cir. 2008).

Prior to bringing a suit against the United States, the FTCA requires that the plaintiff seek administrative relief. 28 U.S.C. § 2675(a). The courts consider these administrative prerequisite actions as "jurisdictional." *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995). As it cannot be waived, a suit against a federal official that does not satisfy the FTCA's requirements lacks subject matter jurisdiction to proceed. Sharratt has failed to exhaust the required administrative remedies. Because the United States has not waived its sovereign immunity, the Court lacks subject matter jurisdiction to proceed. Accordingly, Counts IV-VI must be dismissed.

## CONCLUSION

The Court now **GRANTS** the Defendants' Motion to Dismiss (Document No. 14), and it is ordered that Counts I, II, III, IV, V, and VI are **DISMISSED**.

Date: March 26, 2010

BY THE COURT:

KIM R. GIBSON,
**UNITED STATES DISTRICT JUDGE**